UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES W. MARTIN,

        Plaintiff,

vs.                                          Case No.  3:12-cv-900-J-MCR

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Supplemental Security Income.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED**.

## I.     PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income benefits on November 30, 2007, alleging disability beginning October 6, 1998.[2]  (Tr. 113,145).  The Social Security Administration denied Plaintiff's application initially on April 4, 2008 and again upon reconsideration on June 3, 2008.  (Tr. 64-72).  Plaintiff requested a hearing before an administrative law judge ("ALJ") and his case was heard March 11, 2010.  (Tr. 37-62, 76-77).  On June 29, 2010, the ALJ issued a decision finding Plaintiff not disabled.

---

[1]  The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Docs. 13, 17).

[2]  Plaintiff subsequently amended his alleged onset date to November 20, 2007.  (Tr. 38).

(Tr. 21-31).  On August 27, 2010, Plaintiff requested review by the Appeals Council, which

was denied on June 8, 2012.  (Tr. 1-3, 16-17).  Accordingly, the ALJ's June 29, 2010

decision is the final decision of the Commissioner.  Plaintiff timely filed his Complaint in the

United States District Court on August 9, 2012.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to have been disabled since November 20, 2007, due to an anxiety

disorder, obsessive compulsive disorder, and arthropathy.  (Doc. 19, p. 4).

### B.    Summary of Evidence Before the ALJ

Plaintiff was born June 25, 1956, and was 54 years of age on the date the ALJ's

decision was issued.  (Tr. 31, 113).  Plaintiff has a highschool education and no past

relevant work experience.  (Tr. 119,122).  The following provides a brief summary of

Plaintiff's medical history.  Because Plaintiff's appeal concerns the severity of his mental

impairments only, the Court confines its discussion to the evidence regarding his mental

impairments.

On April 8, 2008, Plaintiff underwent a psychological evaluation conducted by

consultative examiner, Dr. Janet K. Humphreys, Ph.D.  (Tr. 194-96).  During the evaluation,

Plaintiff complained of chronic pain in the left side of his body, anxiety, irritability, low

energy, poor concentration, and poor appetite.  (Tr. 194).  Plaintiff also reported having

panic attacks in closed places and social situations, having a fear of germs, and checking

his locks three times each night before going to bed.  Id.  Dr. Humpheys indicated Plaintiff

appeared to be very anxious, did not exhibit any peculiarity in gait or any involuntary

movements, and spoke spontaneously at a normal rate and tone.  (Tr. 195).  Dr.
Humphreys described Plaintiff as cooperative but guarded and indicated he seemed to
minimize his symptoms.  Id.  Plaintiff's thought process was logical and oriented, and he
showed no peculiarity in thought content.  Id.  Plaintiff did not report or exhibit any
perceptual disturbances and showed good judgement and insight.  Id.  Plaintiff also
exhibited good orientation, memory, information, and calculation.  Id.  Plaintiff showed
some difficulty in abstraction when asked to interpret a common saying.  Id.  Dr.
Humphreys diagnosed Plaintiff with a social phobia, specific phobia, obsessive compulsive
disorder, and a pain disorder.  (Tr. 196).  Dr. Humphreys opined Plaintiff would likely have
difficulty interacting with people on a day to day basis, but might benefit from
psychotherapy.  Id.

    On April 10, 2008, Dr. Michael Zelenka, Ph.D., prepared a Psychological Review
Technique Form ("PRTF") and Mental Residual Functional Capacity ("MRFC") Assessment
based on Plaintiff's medical record.  (Tr. 199-214).  The PRTF indicated Plaintiff suffered
from an anxiety disorder and a somatoform disorder which caused mild restrictions in his
activities of daily living; moderate difficulties in social functioning; and moderate difficulties
in maintaining concentration, persistence, and pace.  (Tr. 199, 209).  In the MRFC
assessment, Dr. Zelenka opined Plaintiff experienced moderate limitations in his ability to
understand and remember detailed instructions, carry out detailed instructions, work in
coordination with or proximity to others without distraction, complete a normal work day or
work week without interruption from psychological symptoms, and interact appropriately
with the general public.  (Tr. 213-14).

On June 23, 2008, Dr. Steven Wise, Psy.D. prepared a second PRTF and MRFC assessment.  (Tr. 217-34).  The PRTF indicated Plaintiff suffered from anxiety related disorders which caused mild limitations in his activities of daily living; moderate difficulties in social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation.  (Tr. 221, 231).  Dr. Wise believed Plaintiff would experience moderate limitations in is ability to complete a normal workday or workweek without interruption from psychological symptoms, interact appropriately with the general public, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others.  (Tr. 217-18).  Dr. Wise's notes provided Plaintiff could understand, remember, and carry out simple tasks.  (Tr. 219). The notes further indicated Plaintiff could maintain concentration and attention to perform routine tasks for two-hour periods during an eight-hour work day, complete a normal workweek, relate to supervisors, relate to coworkers, adapt to simple changes, and avoid work hazards.  Id.

On May 13, 2010, Plaintiff underwent a psychological evaluation conducted by Dr. William Benet, Ph.D., Psy.D.  (Tr. 244-248).  Plaintiff reported suffering from headaches, chronic left knee pain, chronic left shoulder pain, depression, low self esteem, trouble sleeping, panic attacks with agoraphobia, and compulsive hand washing.  (Tr. 245).  Dr. Benet reported Plaintiff appeared anxious on arrival, but calmed down quickly.  (Tr. 246). During a mental status examination, Plaintiff was alert and oriented, exhibited good eye-contact, and displayed normal gait and motor activity.  Id.  Plaintiff's speech was clear, coherent, and relevant.  His thinking was organized and goal directed.  Id.  His perception was accurate with no signs of hallucinations or illusions, and his attention and concentration were adequate.  Id.  Plaintiff's immediate memory was average, and his delayed recall was

4

good.  Id.  Plaintiff's fund of knowledge was above average, his verbal reasoning was very superior, and his general intellectual ability was above average.  Id.  Dr. Benet concluded Plaintiff exhibited traits consistent with a valid 8-7 profile on the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"); however, there was indication that Plaintiff may have unintentionally exaggerated the intensity of symptoms.  (Tr. 247).  Dr. Benet explained such a profile is "associated with ruminative, obsessive, over-ideational individuals who are self-preoccupied and in great distress, manifested by anxiety, depression, and difficulty concentrating, thinking and making decisions."  Id.  Plaintiff was diagnosed with an anxiety disorder, panic disorder with agoraphobia, and obsessive-compulsive disorder.  Id.  Dr. Benet concluded Plaintiff's cognitive functioning was intact and his intellectual functioning was above average, but his emotional status was very fragile.  Id.  Dr. Benet opined Plaintiff was able to perform work related mental tasks involving understanding and memory; however, he was likely to have marked difficulty performing tasks involving sustained concentration and persistence, social interaction, and adaptation.  Id.

On May 19, 2010, Dr. Benet completed a Medical Source Statement of Ability to do Work-Related Activities (Mental).  (Tr. 249-51).  Dr. Benet indicated Plaintiff would have mild difficulties in his ability to carry out complex instructions, mild difficulties in interacting appropriately with co-workers, moderate difficulties in making judgments on complex work-related decisions, and marked difficulties in responding appropriately to usual work situations and to changes in a routine work setting.  (Tr. 249- 50).

C.    Summary of the ALJ's Decision

A claimant is entitled to disability benefits if he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment

5

which can be expected to result in death or last continuously for a period of at least twelve months.  42 U.S.C. §§ 416(i)(1); 423(d)(1)(A); 20 C.F.R. §416.905.  The ALJ must follow a five step sequential process in evaluating a claim of disability.  20 C.F.R. § 416.920(a)(4).  First, if a claimant is performing substantial gainful activity, he is not disabled.  20 C.F.R. § 416.920(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments which significantly limits his ability to do basic work activities, he is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  Third, if the claimant's impairments meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart  P, Appendix 1, the claimant is considered disabled without regard to his age, education, or work experience.  20 C.F.R. § 416.920(a)(4)(iii).  Fourth, if the claimant's impairments do not meet or equal any of the listed impairments, they must prevent him from performing any past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  Fifth, if the claimant's impairments (considering his age, education, work experience, and RFC) prevent him from doing other work that exists in the national economy, he is disabled.  20 C.F.R. § 416.920(a)(4)(v).  Claimants bear the burden of persuasion through the fourth step, but the burden shifts to the Commissioner at the fifth step.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287 n.5 (1987).

In the instant case, at the first step, the ALJ found Plaintiff had not engaged in substantial gainful activity since the date of his application for disability benefits.  (Tr. 23).  At the second step, the ALJ found Plaintiff suffered from the following severe impairments: an anxiety disorder, obsessive compulsive disorder, and arthropathy.  Id.  At the third step, the ALJ found Plaintiff did not have an impairment, or combination of impairments, which met or equaled any of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  Id.  The ALJ determined Plaintiff had an RFC sufficient to perform a reduced range of light work

involving simple routine tasks and occasional interaction with the public.  (Tr. 25).  At the fourth step, the ALJ found Plaintiff did not have any past relevant work.  (Tr. 29).  At the fifth step, based on the testimony of a vocational expert ("VE"), the ALJ found an individual with the same age, education, work experience, and RFC as Plaintiff would be able to perform the duties of a printed materials assembler and an electrical accessories assembler.  (Tr. 29-30).  Consequently, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 30).

## III.   ANALYSIS

### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence must do more than create a mere suspicion of the existence of a fact, and must include relevant evidence which a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan,

932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a

whole, taking into account evidence favorable as well as unfavorable to the decision.

Foote, 67 F.3d at 1560.

    **B.**    **Issues on Appeal**

    Plaintiff raises one issue on appeal.  (Doc. 19, pp. 5-15).  Plaintiff asserts the ALJ

erred in posing an incomplete hypothetical question to the VE, which failed to account for

the severity of his mental impairments.  Id.  Specifically, Plaintiff contends the ALJ's

question failed to account for Dr. Benet's assessment of a marked impairment in Plaintiff's

ability to respond appropriately to usual work situations and changes in a routine work

setting, and moderate difficulties in making judgments on complex work related decisions.[3]

(Doc. 19, pp. 12-16).  The Commissioner responds by arguing the ALJ's RFC

determination and hypothetical question were supported by substantial evidence.  (Doc. 22,

pp. 4-9).  The Commissioner further asserts the ALJ did not err in omitting Dr. Benet's

assessed marked limitation because the ALJ properly rejected this finding.  (Doc. 22, pp. 7-

10).

    When an ALJ relies on the testimony of a VE, "the key inquiry shifts from the RFC

assessment in the ALJ's written decision to the adequacy of the RFC description contained

in the hypothetical posed to the VE."  Corbitt v. Astrue, No. 3:07–cv–518–J–HTS, 2008 WL

1776574, at *3 (M.D. Fla. Apr.17, 2008).  "In order for a vocational expert's testimony to

---

[3] To the extent Plaintiff argues the ALJ failed to account for the moderate difficulties in making complex work related decisions, the Court disagrees.  Dr. Benet also indicated that Plaintiff would have no difficulty understanding, remembering, and carrying out simple instructions.  (Tr. 249).  Accordingly, the ALJ's restriction to simple, routing tasks appears to account for the restrictions in complex decision making assessed by Dr. Benet.

constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir.1999).  Where the hypothetical posed to the VE does not include all of a claimant's limitations, a decision based significantly on the expert testimony is unsupported by substantial evidence.  Pendley v. Heckler, 767 F.2d 1561, 1562 (11th Cir. 1985)

In the instant case, the ALJ posed the following hypothetical question to the VE:

> Please assume that you're dealing with an individual the same age as the claimant, the same educational background and past work experience - - no past work experience.  And further assume that this individual has a residual functional capacity for performing the exertional demands of light work with the following limitations:  The individual I'm describing can only occasionally climb ladders, ropes, or scaffolds.  And the individual I'm describing can have no repetitive overhead reaching with the left upper extremity - - or no constant use - - no overhead reaching.  Plus the individual I'm describing can only perform simple, routine tasks and the individual I'm describing can have only occasional interaction with the public. So based upon that criteria, would there be any jobs existing in the regional and national economy that that individual could perform, given those limitations?

(Tr. 58)  In response to this question, the VE stated:

> [This individual would be restricted to unskilled or very lower-level semi-skilled work within the light exertional range and would be additionally eroded to a degree by restricting only occasional interaction with the public.  The DOT, your honor, does list numerous jobs that exist regionally and nationally that would be within the parameters of the hypothetical.  Many of these jobs are assembler code jobs.  Some representational samples is an Assembler, Printed Products.  DOT code 794.687-010. . . . An additional example would be an Assembler, Electrical Accessories I.  DOT code is 729.687-010.

(Tr. 59).  As stated above, Plaintiff contends the question posed to the VE failed to account for all of the impairments assessed by Dr. Benet.

9

The Commissioner responds the ALJ was not required to account for Plaintiff's marked limitation in responding to usual work situations and changes in a routine work setting because the ALJ properly rejected this finding.  (Doc. 22, pp. 7-10).  Specifically, the Commissioner contends the ALJ concluded Dr. Benet made this assessment based on Plaintiff's self reported history and suggested the finding was inconsistent with Dr. Benet's own observations.  (Doc. 22, p. 7).  Contrary to the Commissioner's argument, the ALJ's decision stated:

> [T]he undersigned also has considered the Medical Source Statement of Ability to do Work-Related Activities (Mental) from Dr. Benet and the Mental Residual Functional Capacity Assessments from Michael Zelenka, Ph.D, and Steven Wise, Psy.D., the state agency psychological experts.  The undersigned accords considerable weight to the opinions of Dr. Benet and the state agency psychological experts who evaluated this issue at the initial and reconsideration levels and reached the same conclusions.

(Tr. 28).  This passage suggests the ALJ did not discount the findings of Dr. Benet's Medical Source Statement but adopted them in determining Plaintiff's RFC.  Indeed, the ALJ explicitly stated he gave considerable weight to Dr. Benet's findings and provided no exception for the assessed marked limitation.  (Tr. 28).

As the Commissioner points out, the ALJ, in discussing Dr. Benet's findings, observed these assessments were obtained without any sustained mental health treatment or long-term benefits from medications and appeared to be based on Plaintiff's self-reported history.  (Tr. 28).  The ALJ also noted Plaintiff reportedly demonstrated adequate attention and concentration during his interview, and the MMPI-2 testing suggested Plaintiff may have unintentionally exaggerated the intensity of his symptoms.  Id.  To the extent the Commissioner argues these statements by the ALJ were provided in order to discount only

the assessed marked limitation in responding to usual work situations and to changes in a

routine setting, the Court disagrees.  The ALJ's statements apply with equal force to all of

the findings in Dr. Benet's Medical Source Statement and provide no basis for rejecting

only the marked limitation.  Indeed, in making these observations, the ALJ referred to Dr.

Benet's findings in general rather than any specific finding.  (Tr. 28).  Accordingly, the Court

finds the ALJ did not properly reject Dr. Benet's assessment of a marked limitation in

Plaintiff's ability to respond to usual work situations and changes in a routine work setting.

Having found the ALJ did not properly reject Dr. Benet's findings, the Court now

considers whether the omission of the marked limitation from the hypothetical posed to the

VE constituted reversible error.  At least one court in the Eleventh Circuit has had occasion

to consider a similar issue.  See Harris v. Astrue, 1:11-cv-310-CSC, 2012 WL 3031257

(M.D. Ala. July 25, 2012) (remanding ALJ's decision where the ALJ failed to address the

effect of a marked impairment in the plaintiff's ability to respond appropriately to usual work

situations).  As the court in Harris noted, the Social Security Rulings explain,

> The basic mental demands of competitive, remunerative,
> unskilled work include the abilities (on a sustained basis) to
> understand, carry out, and remember simple instructions; ***to
> respond appropriately to supervision, coworkers, and usual
> work situations; and to deal with changes in a routine work
> setting.*** A substantial loss of ability to meet any of these basic
> work-related activities would severely limit the potential
> occupational base. This, in turn, would justify a finding of
> disability because even favorable age, education, or work
> experience will not offset such a severely limited occupational
> base.

SSR 85-15, 1985 WL 56857 at *4 (SSA 1985) (emphasis added).  In the instant case, the

VE's response to the ALJ's hypothetical question made clear that Plaintiff mental

impairments limited Plaintiff's occupational base to unskilled work or lower level semi-

skilled work.  (Tr. 59).  Because the basic mental demands of unskilled work require an ability to respond to changes in a routine work setting, the inclusion of Dr. Benet's assessed marked impairment would very likely have an impact on the VE's testimony in this case.  Accordingly, the VE's testimony in response to the hypothetical question posed by the ALJ does not constitute substantial evidence in support of the ALJ's final decision.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED and REMANDED**.  On remand, the Commissioner is directed to: (1) review the opinions and findings of Dr. Benet and explain in detail the weight accorded to them, including the assessed marked limitation in Plaintiff's ability to respond to changes in a routine work setting; (2) pose a hypothetical question to a VE which clearly sets forth all of Plaintiff's limitations; and (3) conduct any further proceedings necessary in light of any new findings.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration.  **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** at Jacksonville, Florida, this __26th__ day of July, 2013.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record

12